**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAMUEL FRIEDMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MASPETH FEDERAL LOAN AND SAVINGS ASSOCIATION, <br><br> Defendant. | Case No.: <br><br> Jury Trial Demanded <br><br> Class Action Complaint |

Plaintiff Samuel Friedman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his Class Action Complaint ("Complaint") against Defendant Maspeth Federal Loan and Savings Association ("Maspeth" or "Defendant"), alleges the following upon personal knowledge as to himself and his own acts, and upon information and belief as to all other matters, based on, *inter alia*, the investigation conducted by and through his attorneys as follows:

**PARTIES**

1.      Plaintiff Samuel Friedman is a citizen of the State of New York and a resident of Brooklyn, County of Kings.

2.      Plaintiff has a mortgage that was originated and has been serviced by Maspeth. The mortgage is for property located at 734 East 3rd Street, Brooklyn, New York.

3.      Maspeth is a federally-chartered savings and loan association that engages in the business of consumer and commercial banking with headquarters at 56-18 69th Street, Maspeth,

NY, 11378, and five branch offices located throughout Queens and Nassau Counties. Maspeth transacts in the business of originating and servicing mortgages, *inter alia*, within this District.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over the claims asserted herein individually and on behalf of the Class pursuant to 28 U.S.C. §1332, as amended in February 2005 by the Class Action Fairness Act. Subject matter jurisdiction is proper because: (1) the amount in controversy in this class action exceeds five million dollars, exclusive of interest and costs; and (2) a substantial number of the members of the proposed Classes are citizens of a state different from that of Defendant.

5.      This Court also has jurisdiction over this action under 28 U.S.C. §1331 and 15 U.S.C. §1640(e) because Plaintiff asserts claims arising under the federal Truth in Lending Act, 15 U.S.C. §1601, *et seq.* (the "TILA").

6.      Maspeth's principal place of business and headquarters is in Queens, New York. Defendant transacts business within the State of New York and outside the State of New York, and committed acts inside the State of New York or outside the State of New York causing injury within the State of New York.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because Maspeth is headquartered in Maspeth, Queens; provides services to Class members located in this District; conducts substantial business in this District; or otherwise has sufficient contacts with this District to justify it being fairly brought into court in this District.

## FACTUAL ALLEGATIONS

8.     This case arises out of a systemic practice by Maspeth involving its servicing of mortgages and its wrongful imposition of certain late charges when respective monthly payments for which late charges have been imposed were, in fact, timely made.

9.     Pursuant to the terms of the loan underlying the mortgage, monthly payments are due on the first of each month and are considered timely paid if received within the first fifteen days of the month.  *See* Bond, ¶9, Exhibit A hereto.  After the fifteenth, Maspeth has the option to impose a "late charge" to offset the expense involved in handling delinquent payments.  *Id.* Maspeth has, however, explicitly represented to Plaintiff and the putative Class that it will not impose late charges as long as payment is "RECIEVED by 8:00 P.M. on the 16th of each month." Mortgage Loan Payment Book at 4, Exhibit B hereto (Emphasis in the original).  Thus, if payment is received by 8:00 P.M. on the 16th of the month, no late charges are applicable. Maspeth nevertheless routinely, as a matter of pattern and practice, improperly imposes late fees of 2% of the overdue payment on borrowers whose payments are, in fact, received prior to 8:00 P.M. on the 16th of each month.

10.     Paragraph nine of the Bond, captioned "**LATE CHARGES**", provides:

> The BORROWER further agrees that in the event any monthly payment of interest, principal, taxes, assessments, insurance, water rates, or any of them, due to be paid to the LENDER on the first day of any month, is not paid to it during the first FIFTEEN (15) days of each month, the BORROWER will, *at the option of the LENDER*,  pay to it a "late charge" of TWO PER CENT (2%) of the overdue payment to cover the expense involved in handling delinquent payments and that such "late charge" may be collected by the LENDER out of any future payment or any moneys held in the mortgage escrow account.  [Emphasis added].

Exhibit A.

11.     Although Maspeth had the option of imposing a late charge for payments received after the fifteenth of the month, Maspeth represented to Plaintiff and the putative Class that it

3

would not impose the charge unless payment was received after 8:00 P.M. on the 16th of each month.  The Mortgage Loan Payment Book Maspeth provided to Plaintiff and the putative Class specifically stated that "[t]o avoid a late charge, payment must be RECEIVED by 8:00 P.M. on the 16th of each month.  Post office post marks do not apply."  Exhibit B at 4 (Emphasis in the original).

12.     Maspeth further confirmed its policy on each of the monthly payment coupons contained in the Mortgage Loan Payment Book it provided to Plaintiff and the Class.   The payment coupons set forth a larger payment amount if the Plaintiff chose to "PAY ON OR AFTER [MONTH] 17 – [20]13."  *Id*. at B-7-B-10.

13.     Plaintiff mailed his mortgage payments for delivery to Maspeth prior to 8:00 p.m. on the 16th of the month.

14.     Over the past three years, Maspeth has repeatedly charged Plaintiff late fees despite having received Plaintiff's mortgage payments prior to 8:00 p.m. on the 16th of the month.

15.     For instance, on March 15, 2011, Plaintiff used Express Mail with the United States Postal Service ("USPS") to send his monthly mortgage payment to Maspeth.   The following day, on March 16, 2011, at 9:25 a.m., Plaintiff's payment was delivered to Maspeth and signed for by a Maspeth employee.  Plaintiff's payment was, therefore, timely.  *See* Exhibit C hereto (USPS mailing slip and USPS proof of delivery).  Maspeth nevertheless imposed a late charge on Plaintiff for his March 2011 mortgage payment.

16.     Similarly, on March 15, 2012, Plaintiff sent via USPS Express Mail his monthly mortgage payment to Maspeth.  The following day, on March 16, 2012, at 8:36 a.m., Plaintiff received notification that Plaintiff's payment was delivered to Maspeth and signed for by a

Maspeth employee.  Plaintiff's payment was, therefore, timely.  *See* Exhibit D hereto (USPS mailing slip and USPS proof of delivery).  In contradiction to Defendant's representations, Maspeth nevertheless imposed a late charge on Plaintiff for his March 2012 mortgage payment.

17.     On May 15, 2012, Plaintiff sent via USPS Express Mail his monthly mortgage payment to Maspeth.  The following day, Plaintiff received notification that on May 16, 2012, at 9:11 a.m., Plaintiff's payment was delivered to Maspeth and signed for by a Maspeth employee.  Plaintiff's payment was, therefore, timely.  *See* Exhibit E hereto (USPS mailing slip and USPS proof of delivery).  Maspeth nevertheless imposed a late charge on Plaintiff for his May 2012 mortgage payment.

18.     Likewise, on July 15, 2013, Plaintiff sent via USPS Express Mail his monthly mortgage payment to Maspeth.  The following day, on July 16, 2013, at 9:09 a.m., Plaintiff's payment was delivered to Maspeth and signed for by a Maspeth employee.  Plaintiff's payment was, therefore, timely.  In contradiction to Defendant's representations, Maspeth nevertheless imposed a late charge on Plaintiff for his July 2013 mortgage payment.  *See* Exhibit F hereto (USPS mailing slip, USPS proof of delivery and Maspeth's Loan Payment Past Due Notice to Plaintiff dated July 16, 2013).

19.     Maspeth is unfairly and improperly charging late charges when, in fact, the Plaintiff and members of the Class have made timely monthly mortgage payments in accordance with Maspeth's own representations to Plaintiff and the Class.

20.     Thus, Plaintiff, on behalf of himself and all others similarly situated, seeks to enjoin these oppressive and unconscionable practices which breach the contractual agreements between the parties, constitute unfair and deceptive acts and practices, and otherwise violate the

law.   Accordingly, Plaintiff comes to this Court seeking appropriate damages and injunctive

relief.

**CLASS ACTION ALLEGATIONS**

21.    Plaintiff brings this action individually and as a class action pursuant to Federal

Rule of Civil Procedure 23 on behalf of himself and the Class defined as follows:

> All persons whose mortgages are or have been serviced by Maspeth, and have
> been or are subject to Maspeth's improper imposition of late charges, when, in
> fact, applicable monthly mortgage payments have been made on a timely basis.
> Excluded from the Class is the Defendant, the officers and directors of Maspeth,
> at all relevant times, members of their immediate families and their legal
> representatives, heirs, successors or assigns and any entity in which the Defendant
> has or had a controlling interest.

22.    The Class satisfies the numerosity, commonality, typicality, adequacy,

predominance, and superiority requirements.

23.    The members of the Class are so numerous that joinder of all Class members is

impracticable.  As of the time of the filing of this Class Action Complaint, Maspeth has nearly

50,000 customers (*see* http://www.prnewswire.com/news-releases/maspeth-federal-savings-and-

loan-association-selects-digital-insight-to-provide-internet-banking-through-2013-

55978637.html), including mortgagors subject to the unlawful conduct alleged in this Complaint.

While the exact number of Class members is unknown to Plaintiff at this time and can only be

ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands

of members in the proposed Class.   Members of the Class may be identified from records

maintained by Maspeth and notified of the pendency of this action by mail, using the form of

notice similar to that customarily used in consumer class actions.

24.    Plaintiff's claims are typical of the claims of the members of the Class.  Plaintiff

has no interests that are adverse or antagonistic to those of the Class.  Plaintiff's interests are to

obtain relief for himself and the Class for the harm arising out of the common methods, acts, practices, and conduct pled herein.

26. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in complex and class action litigation.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by each member of the Class are relatively small, the expense and burden of individual litigation make it virtually impossible for Plaintiff and the members of the Class to individually seek redress for the wrongful conduct alleged herein.

27. In addition, Maspeth has acted and/or refused to act on grounds generally applicable to the Class, thereby making final injunctive relief to enjoin and cause Maspeth to cease its unlawful practices.

28. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

      a.    Whether Maspeth breached implied contractual duties of good faith and/or fair dealing owed to Plaintiff and/or the Class;

      b.    Whether Maspeth breached the terms of the contracts;

      c.    Whether Maspeth violated the TILA, 15 U.S.C. §1601, *et seq.*;

      d.    Whether Maspeth violated New York General Business Law §349;

      e.    Whether Maspeth's methods, acts, practices, and conduct were misleading and/or deceptive;

f.      The proper measure of damages to be paid to Plaintiff and/or the Class; and

g.      Whether Plaintiff and/or the Class are entitled to injunctive relief to remedy Maspeth's past and continuing violations of laws alleged herein.

29.     Plaintiff and his counsel know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## COUNT I

### VIOLATIONS OF THE FEDERAL TRUTH IN LENDING ACT

30.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

31.     At all times relevant to this action, the Federal Truth in Lending Act (the "TILA"), 15 U.S.C. §1601, *et seq.*, was in full force and effect.

32.     Congress enacted the TILA to regulate the disclosure of the terms of consumer credit transactions to assist unsophisticated consumers and prevent creditors from misleading consumers as to the actual cost of financing.  Specifically, the TILA is designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uniformed use of credit."  15 U.S.C. §1601(a).

33.     Strict compliance with the requirements of the TILA is required.

34.     Maspeth was, at all times relevant to this action and with respect to Plaintiff and each member of the Class, a "creditor" under the TILA, as that term is defined in 15 U.S.C. §1602(g).

8

35.     Plaintiff and each member of the Class were, at all times relevant to this action and with respect to Maspeth, a "consumer" under the TILA, as that term is defined in 15 U.S.C. §1602(i), and a "person" under the TILA, as that term is defined in 15 U.S.C. §1602(e).

36.     The mortgage loans originated and sold by Maspeth to Plaintiff and the Class are consumer credit transactions, and also "residential mortgage transactions," as that term is defined in 15 U.S.C. §1602(x).

37.     The TILA prohibited Maspeth from engaging in deceptive or misleading disclosures or other misconduct related to its servicing of mortgages and its wrongful imposition of late charges when respective monthly payments for which late charges have been imposed were current.

38.     None of the charges wrongfully imposed by Maspeth are *bona fide* or reasonable, such that they may be excluded from the accurate disclosure of the finance charge imposed by Maspeth on Plaintiff and the Class.

39.     The TILA required Maspeth to provide an accurate periodic statement stating the period during which Plaintiff and the Class could pay their balance without incurring further charges.  *See* 15 U.S.C. §1637(b)(9); Regulation Z, 12 C.F.R. §226.7(j).

40.     The TILA required Maspeth to provide an accurate itemization of any charges imposed in connection with the mortgage, including accurately disclosing the time when any late fees are payable.  *See* 15 U.S.C. §1637a(a)(3).

41.     The TILA prohibited Maspeth from altering any significant term of the bond, mortgage agreement, or mortgage loan payment book.  *See* 15 U.S.C. §1647(c); Regulation Z, 12 C.F.R. §226.5b.

42.    Maspeth violated the TILA by: (1) engaging in misleading or deceptive disclosures or other misconduct as set forth herein; (2) failing to inform Plaintiff and the Class of when it would actually consider a payment late, thereby triggering the imposition of a late charge; (3) wrongfully imposing a late charge on timely-made payments; (4) imposing a late charge on the payment when the mortgage loan payment book specified a later date and time when by which the payment would be deemed timely; (5) failing to provide accurate periodic statements stating the date by which payment must be made to late charges; and (6) unilaterally changing a significant term of the mortgage agreement and related documentation.

43.    Maspeth's acts, practices, and conduct constitute *per se* violations of the TILA. Even if not *per se* violations, Maspeth's acts, practices, and conduct violate the TILA.

44.    As a result of Maspeth's violations of the TILA, Plaintiff and the Class are entitled to statutory damages for one or more of the TILA violations identified herein.

45.    As a result of Maspeth's violations of the TILA, Plaintiff and the Class have suffered actual damages and are entitled to recover their actual damages.

46.    As a result of Maspeth's violations of the TILA, Plaintiff and the Class are entitled to recover their costs, expenses, and attorneys' fees incurred in this action.

47.    Furthermore, Plaintiff and the Class are entitled to the entry of an order enjoining Maspeth from continuing to violate the TILA as alleged herein.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW §349

48.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

49.     Plaintiff and the members of the Class are "persons" within the meaning of GBL §349(h).

50.     GBL §349(a) states: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."

51.     Maspeth's misleading and deceptive acts, policies, and practices adversely impacted Plaintiff and other Class members and therefore constitute consumer-oriented conduct under GBL §349 that resulted in actual and direct harm to Plaintiff and Class members.

52.     Maspeth engaged in misleading acts, policies, and practices defined and prohibited by GBL §349.  By engaging in the conduct alleged in this Complaint, Maspeth engaged in misleading acts and practices in that its conduct had a tendency and likelihood to, and did in fact, deceive Plaintiff and the Class among the persons to whom such conduct was and is targeted.

53.     Maspeth engaged in deceptive acts, policies, and practices in the form of misrepresentations and/or material omissions during the conduct of business in and from New York in violation of GBL §349(a) by engaging in the methods, acts, practices, and conduct described in this Complaint, including the following:

    a.     Making false or misleading statements of fact, by silence or otherwise; and

    b.     Knowingly misrepresenting that late charges were permissible, lawful, and contractually appropriate.

54.     As a direct and proximate result of Maspeth's violations of GBL §349(a), Plaintiff and the Class suffered actual losses, damages, and injuries, including Maspeth's imposition and collection of late charges that should not have been imposed or collected.

55.     In addition to pecuniary losses, Plaintiff and the Class suffered actual harm as a result of Maspeth's violations of GBL §349(a), including, but not limited to, the annoyance, harassment, time, frustration, anger, and anxiety incurred by Plaintiff and the Class due to Maspeth's violations of GBL §349.

56.     Maspeth's violations of GBL §349(a) have directly, foreseeably, and proximately caused damages and injury to Plaintiff and the Class.

57.     Plaintiff and the Class are entitled to pursue claims against Maspeth for damages, statutory damages, treble damages, exemplary damages, injunctive relief, costs, and attorney's fees pursuant to GBL §349(h) to redress Maspeth's violations of GBL §349(a).

58.     Class members who were sixty-five years of age or older at the time of Maspeth Federal's violations of GBL §349 are entitled to pursue additional claims against Maspeth pursuant to GBL §349-c, which allows redress for violations of GBL §349(a) perpetrated against one or more elderly persons.

## COUNT III

### BREACH OF IMPLIED CONTRACTUAL
### DUTIES OF GOOD FAITH AND FAIR DEALING

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     Plaintiff and members of the Class have, or had, agreements with Maspeth concerning mortgages originated and serviced by Maspeth.

61.     Maspeth owed Plaintiff and members of the Class implied duties of good faith and fair dealing to not deprive them of the benefits of the agreements, and not to apply Maspeth discretion over the agreements arbitrarily, irrationally, in bad faith, or in a manner that benefitted Maspeth and harmed Plaintiff and the members of the Class.  Maspeth breached these implied

duties of good faith and fair dealing by acting with bad faith and in a manner designed to harm Plaintiff and the Class and to financially benefit Maspeth.

62.    Maspeth breached its implied duties of good faith and fair dealing to Plaintiff and the Class by engaging in the methods, acts, practices, and conduct described in this Complaint, including the following:

      a.    Making false or misleading statements of fact, by silence or otherwise; and

      b.    Knowingly misrepresenting that late charges were permissible, lawful, and contractually appropriate.

63.    For each breach of the implied duties of good faith and fair dealing, Maspeth imposed and collected late charges, thereby causing actual and financial injury and damage to Plaintiff and all Class members.

## COUNT IV

## BREACH OF CONTRACT

64.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.    The mortgage contract (including the mortgage and the bond) by and between Plaintiff and Maspeth is a generic mortgage contract utilized by numerous mortgagees, mortgagors, mortgage servicers, and other related entities.

66.    All of the elements of contract are present in the transactions involving Plaintiff, members of the Class, and Maspeth, to wit:

      a.    Offer and acceptance;

      b.    Consideration; and

      c.    Mutual meeting of the minds.

67.     It is the contractual obligation of Plaintiff and members of the Class to make timely payments on their mortgages.

68.     It is the contractual responsibility of Maspeth to receive mortgage payments and properly credit the mortgagors therefor.

69.     If Plaintiff and any member of the Class should make a payment late, to wit, after 8:00 p.m. of the 16th of the respective month, Maspeth is entitled to a late charge therefor.

70.     Maspeth has been imposing late charges to persons whose mortgages are serviced by Maspeth regardless of whether the payments have been and are timely, made prior to 8:00 p.m. of the 16th of the respective month(s).

71.     These charges constitute a systemic violation of the generic and universal contract by and between Plaintiff and the members of the Class and Maspeth.

72.     Plaintiff and members of the Class have had late charges imposed, which Maspeth collected, or attempted to collect.

73.     These charges violate the contract.

## COUNT V

## UNJUST ENRICHMENT

74.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein and, to the extent necessary, pleads this cause of action in the alternative.

75.     By paying Maspeth's wrongfully imposed late charges, Plaintiff and members of the Class have conferred a financial benefit upon Maspeth.

76.     Maspeth accepted or retained the benefits conferred by Plaintiff and members of the Class with full knowledge and awareness that, as a result of Maspeth's wrongful imposition

14

of late charges, Maspeth was unjustly enriched at the expense of the Plaintiff and members of the Class.

77.    Maspeth's retention of the benefits was and is unjust and inequitable.  Thus, Maspeth must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

<b><u>PRAYER FOR RELIEF</u></b>

**WHEREFORE**, Plaintiff and the Class pray for judgment against Maspeth as follows:

(1)    Certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiff as representative of the Class, and designating his counsel as counsel for the Class;

(2)    Awarding Plaintiff and the Class compensatory damages;

(3)    Awarding Plaintiff and the Class statutory and exemplary damages where permitted, as well as pre and post judgment interest;

(4)    Permanently enjoining Maspeth from continuing to engage in the unlawful and inequitable conduct alleged herein;

(5)    Granting Plaintiff and the Class the costs and expenses of prosecuting this action, together with interest and reasonable attorneys' fees; and

(6)    Granting such other relief as this Court may deem just and proper under the circumstances.

<b><u>JURY DEMAND</u></b>

Plaintiff and the Class demand a trial by jury on all issues so triable.

Dated:  November 13, 2013

SCOTT+SCOTT, ATTORNEYS AT LAW, LLP

Joseph P. Guglielmo (JG-2447)
Joseph D. Cohen
The Chrysler Building
405 Lexington Avenue, 40th Floor
New York, NY 10174
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
jcohen@scott-scott.com

David R. Scott
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
156 South Main Street
P.O. Box 192
Colchester, CT 06415
Telephone: (860) 537-5537
Facsimile: (860) 537-4432
david.scott@scott-scott.com

Christopher M. Burke
SCOTT+SCOTT, ATTORNEYS AT LAW, LLP
707 Broadway
Suite 1000
San Diego, CA 92101
Telephone: (619) 233-4565
Facsimile: (619) 233-0508
cburke@scott-scott.com

Jack I. Zwick, Esq. (JZ-2514)
100 Church Street, Suite 850
New York, NY 10007
Telephone: (212) 385-1900
Facsimile: (212) 385-1911
jack@zwickfirm.com

# EXHIBIT A

Loan No. **115171**

# BOND

## 1. BORROWER'S PROMISE TO PAY

That,

**SAMUEL FRIEDMAN  residing at 730 EAST 3RD STREET, BROOKLYN, NY 11218**

member(s) of the association and designated as the BORROWER(S) acknowledge(s) to be indebted to the

## MASPETH FEDERAL SAVINGS AND LOAN ASSOCIATION

a savings and loan association, organized and existing under the laws of the United States of America, having its office at 56-18 69th Street, Maspeth, NY 11378 and designated as the LENDER, in the sum of

————FOUR HUNDRED THIRTY SEVEN THOUSAND FIVE HUNDRED AND 00/100————($437,500.00)—— — DOLLARS,

which sum with interest on unpaid balance of principal, at the rate of **SEVEN (7.00%)** percent per year from the date of this bond, the BORROWER does promise to pay to the LENDER, its successors or assigns.

## 2. PAYMENTS

(A) BORROWER(S) shall make payment of not less than

————TWO THOUSAND NINE HUNDRED TEN AND 70/100———— ($2,910.70)—— DOLLARS

beginning on **JANUARY 1, 2009** and a like sum on the first day of each and every month thereafter, until the whole of the principal sum and interest shall be fully paid, which interest shall be computed on a monthly basis, and the entire unpaid balance of principal, if any, shall be due and payable on **DECEMBER 1, 2038.**

(B) The monthly payments shall be applied by the LENDER in the following order: FIRST, towards the payment of interest, and SECOND, towards the payment of the principal sum remaining unpaid. Interest will be charged on that part of principal which has not been paid.

## 3. ADDITIONAL MONTHLY CHARGES

(A) That in addition to the minimum monthly payment of principal and interest, the LENDER may at its option, have the BORROWER pay to the LENDER, at the time of the monthly payments of principal and interest, one-twelfth (1/12) of the total annual taxes, water rates, sewer rental tax and insurance premiums including the charge for extended coverage, as estimated and required by the LENDER.

(B) If LENDER fails to exercise this option, and LENDER pays any of the above mentioned taxes, rates or premiums, such payments or advances shall be added to and become part of the unpaid balance.

(C) If at any time the monthly payment is found insufficient in the opinion of the LENDER, to fully pay the taxes, water charges, sewer rental tax, insurance premiums including extended coverage charge or tax reserve, the BORROWER agrees to pay such deficiency IMMEDIATELY upon demand. If BORROWER does not pay within FIFTEEN (15) days after demand, the whole of the principal sum remaining due and unpaid with accrued interest, shall, at the option of the LENDER IMMEDIATELY become due and payable. Any other future real estate tax or additional real estate tax that may become a lien on the property, described in the mortgage securing this bond, may be paid and apportioned in monthly payments by the LENDER in the same manner as provided for above.

(D) That the LENDER may, at any time, waive the monthly payment to it for taxes and/or water rates, sewer rental tax and/or insurance premiums including extended coverage or either of them and in the event of such waiver, such charges shall be paid by the BORROWER and proof that these payments have been made shall be furnished to the LENDER.

## 4. PREPAYMENT

That the BORROWER has the right to prepay the entire amount due on this obligation, or any part thereof, at any time without penalty.

## 5. DEFAULT

That the whole of the principal sum and interest remaining shall become due IMMEDIATELY, at the option of the LENDER, its successors or assigns, after default in the payment of any  monthly installment described above for FIFTEEN (15) days, or after default in the payments of any taxes, water rates, assessments, insurance premiums and/or similar charges affecting the mortgaged premises for FIFTEEN (15) days, or upon the happening of any event by which, under the terms of the mortgage having the same date as this bond, the said principal sum  may or shall become due and payable.

## 6. MORTGAGE

That ALL the covenants and agreements made by the BORROWER in the mortgage having the same date as this bond and covering the described premises are made part of this bond.

## 7. NOTICE

That the BORROWER will ... IMMEDIATE written notice to the LENL.... of any damage, from whatever cause, to the mortgaged premises, or of any conveyance, transfer, or change of ownership thereof.

## 8. MASPETH FEDERAL CHARTER AND BY-LAWS

(A) That the BORROWER hereby becomes a member of the LENDER (Association) and the BORROWER hereby agrees to abide by the terms and provisions of LENDER'S charter and by-laws as they are now and as they may be hereafter revised, altered or amended.

(B) The Association exists under the laws of the United States and the rules and regulations of the Federal Savings and Loan System and under charter and by-laws approved by said Federal Savings and Loan System and it is expressly agreed that these regulations, rules, charter and by-laws as they now are and as they may hereafter be amended are a part of this agreement and that the BORROWER agrees to abide by them and hereby subscribes thereto.

## 9. LATE CHARGES

The BORROWER further agrees that in the event any monthly payment of interest, principal, taxes, assessments, insurance, water rates, or any of them, due to be paid to the LENDER on the first day of any month, is not paid to it during the first FIFTEEN (15) days of each month, the BORROWER will, at the option of the LENDER, pay to it a "late charge" of TWO PER CENT (2%) of the overdue payment to cover the expense involved in handling delinquent payments and that such "late charge" may be collected by the LENDER out of any future payment or any moneys held in the mortgage escrow account.

## 10. RETURNED CHECKS

That in the event any of the BORROWER'S checks for payment of this mortgage are returned unpaid for any reason, the LENDER shall have the right to impose a charge to cover the cost of additional bookkeeping and other work involved in processing the payment. The charge will be the current fee charged by the LENDER at the time of the returned check. This charge may be collected by the LENDER out of any future payment or any moneys held in the mortgage escrow account.

## 11. RESPONSIBILITY OF PARTIES UNDER THIS BOND

(A) That the BORROWER will give IMMEDIATE written notice to the LENDER of any damage, from whatever cause, to the mortgaged premises, or of any conveyance transfer or change of ownership thereof.

(B) That if more than one party joins in the execution of this instrument, the covenants and agreements contained in this bond shall be their joint and several obligations, and the relative words contained in this bond shall read as if written in the plural.

SIGNED AND SEALED  NOVEMBER 25, 2008

In the presence of:

SAMUEL FRIEDMAN

# EXHIBIT B



B-1

### IMPORTANT — PLEASE READ CAREFULLY

- Do not mail this book. Tear out only the coupon you wish to pay and forward with your payment. When paying in person please bring entire coupon book.

- Do not send cash by mail. Make checks or money orders payable to Maspeth Federal Savings. Your cancelled check or money order stub is your receipt for payments made by mail.

- Do not staple or tape check to coupon.

- Payments must be made on or before the due date to avoid late charges.

- Write your mortgage number on the face of your check.

- Under the terms of your mortgage, you are required to maintain fire and extended property insurance coverage.

- A new coupon book will be automatically mailed to you each year.

- Please notify us immediately of a change of address.

### Notice of Negative Information (Pre-sharing):

Federal law requires us to provide the following notice to customers before any "negative information" may be furnished to a nationwide consumer reporting agency. . ."Negative information" means information concerning delinquencies, late payments, insolvency, or any form of default. This notice does not mean that we will be reporting such information about you, only that we may report such information about customers that have not done what they are required to do under our agreement. After providing this notice, additional negative information may be submitted without providing another notice.

**We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.**

## -IMPORTANT-

To avoid a late charge, payment must be <u>RECEIVED</u> by 8:00 P.M on the 16th of each month.

Post Office post marks do not apply.

Dear Customer:

Maspeth Federal Savings is pleased to provide you with your new loan payment booklet. The coupon booklet serves as an easy way for you to record your payments and it identifies them for prompt, proper credit to your account. Each payment coupon has a preaddressed gummed label attached to it which can be affixed to your envelope when mailing in your payments.

Your escrow account is analyzed annually in order to insure that sufficient funds will be available to pay your escrow items as they become due. Since the amounts of your escrow disbursements may vary from year to year, your payments will also vary depending on the increase or decrease of your escrow items.

Your new monthly payment has been adjusted by an amount sufficient to correct the excess or deficit, if any.

If we may be of further assistance, please call our mortgage servicing department during business hours.

When your coupons have all been used, it is not necessary to call Maspeth Federal Savings. A new coupon book will be mailed to you automatically before your next payment is due.

YOU WILL RECEIVE YOUR SUBSTITUTE FORM 1098 ON YOUR ANNUAL LOAN STATEMENT ON OR BEFORE JANUARY 31ST.

B-5

THE FOLLOWING INFORMATION IS IMPORTANT TO YOU:

(a) Maspeth Federal Savings is obligated to make all payments for taxes and/or insurance for which your escrow account is maintained and that if any such payments are not timely, Maspeth Federal Savings is responsible for making such payments including any penalties and interest;

(b) You are obligated to pay one-twelfth of the annual bill plus any cushion allowed under law each month to Maspeth Federal Savings which is deposited into your escrow account, unless there is a deficiency or surplus in the account, in which case a greater or lesser amount may be required;

(c) Maspeth Federal Savings holds your escrow account and this deposit is insured under the FDIC;

(d) Maspeth Federal Savings cannot impose any fees relating to the maintenance of your escrow account.

| PAYMT. NO. | ACCOUNT NUMBER | "ON TIME" PAYMENT - DUE ON OR BEFORE | |
|---|---|---|---|
| | 50-000000115171 | $3,269.35 | AUG 01 - 13 |

| | "LATE" PAYMENT - PAY ON OR AFTER | |
|---|---|---|
| SAMUEL FRIEDMAN | $3,334.74 | AUG 17 - 13 |

CHECK NO.
PAYMT
AMT
AUG 01 - 13
DATE PAID
DATE DUE

MASPETH FEDERAL SAVINGS
P O BOX 5886
HICKSVILLE NY 11801

MASPETH FEDERAL SAVINGS
P O BOX 5886
HICKSVILLE NY 11801

| ADDITIONAL PRINCIPAL | $_____ |
|---|---|
| ADDITIONAL TAX OR INS. | $_____ |
| LATE CHARGE | $_____ |
| TOTAL PAYMENT | $_____ |

⑆ 221472792 ⑆   00⠍ 1151715⠍0�llⁱ         ⠌⁰0000326935⠌ⁱ



| PAYMT. NO. | ACCOUNT NUMBER | "ON TIME" PAYMENT - DUE ON OR BEFORE |
|---|---|---|
| | 50-000000115171 | $3,269.35    SEP 01 - 13 |

"LATE" PAYMENT - PAY ON OR AFTER
$3,334.74    SEP 17 - 13

SAMUEL FRIEDMAN

ADDITIONAL PRINCIPAL    $_____
ADDITIONAL TAX OR INS.   $_____
LATE CHARGE               $_____

MASPETH FEDERAL SAVINGS
P O BOX 5886
HICKSVILLE NY 11801

TOTAL PAYMENT    $_____

DATE PAID   SEP 01 - 13   AMT
DATE DUE                   PAYMT   CHECK NO.

MASPETH FEDERAL SAVINGS
P O BOX 5886
HICKSVILLE NY 11801

⑆221472792⑆ 00⑈115171 5⑈0⑈    ⑇0000326935⑇

| PAYMT. NO. | ACCOUNT NUMBER | "ON TIME" PAYMENT - DUE ON OR BEFORE | |
|---|---|---|---|
| | 50-000000115171 | $3,269.35 | OCT 01 - 13 |
| | | "LATE" PAYMENT - PAY ON OR AFTER | |
| | SAMUEL FRIEDMAN | $3,334.74 | OCT 17 - 13 |

DATE PAID
DATE DUE
OCT 01 - 13
AMT
CHECK NO.
PAYMT

**MASPETH FEDERAL SAVINGS**
**P O BOX 5886**
**HICKSVILLE NY 11801**

MASPETH FEDERAL SAVINGS
P O BOX 5886
HICKSVILLE NY 11801

| ADDITIONAL PRINCIPAL | $_____ |
|---|---|
| ADDITIONAL TAX OR INS. | $_____ |
| LATE CHARGE | $_____ |
| TOTAL PAYMENT | $_____ |

⑆221472792⑆ 00⑈1151715⑈0⑉ ⑈0000326935⑈

| PAYMT. NO. | ACCOUNT NUMBER |
|---|---|
| | 50-000000115171 |

SAMUEL FRIEDMAN

| "ON TIME" PAYMENT - DUE ON OR BEFORE | |
|---|---|
| $3,269.35 | NOV 01 - 13 |
| "LATE" PAYMENT - PAY ON OR AFTER | |
| $3,334.74 | NOV 17 - 13 |

| | |
|---|---|
| ADDITIONAL PRINCIPAL | $ _____ |
| ADDITIONAL TAX OR INS. | $ _____ |
| LATE CHARGE | $ _____ |
| TOTAL PAYMENT | $ _____ |

CHECK NO.
PAYMT
AMT
NOV 01 - 13
DATE PAID
DATE DUE

MASPETH FEDERAL SAVINGS
P O BOX 5886
HICKSVILLE NY 11801

MASPETH FEDERAL SAVINGS
P O BOX 5886
HICKSVILLE NY 11801

⑆221472792⑆ 00⑈1151715⑈0⑉     ⑈0000326935⑈

NCP SOLUTIONS - BIRMINGHAM, ALABAMA



# MASPETH FEDERAL SAVINGS

## We Treat You Like Family

## Customer Services

**Maspeth Federal Savings**
**Online Banking with**
**FREE Bill Pay**
**www.maspethfederal.com**

Savings Accounts
Certificate Accounts
Money Market Accounts
Roth, CESA & Traditional
    IRA Accounts
Direct Deposit
Mortgage Loans
Condominium Loans
Refinancing Loans
Home Equity Loans
Home Improvement Loans
Construction Loans
Passbook Loans
International Money Orders

Safe Deposit Boxes
Travelers Checks • Gift Checks
Holiday & Vacation Clubs
Payment of Con Edison Bills
(at Maspeth, Rego Park, Forest Hills, Ridgewood, &
    Fresh Meadows)
Payment of National Grid Bills
(At Maspeth, Rego Park, Forest Hills, & Ridgewood)
Money Orders
Bank-by-Mail (We pay postage both ways)
Collection of Funds from Other Institutions
ETA℠ - Electronic Transfer Accounts
Walk-Up Window (Maspeth)

Drive-Up Windows (Maspeth, Forest Hills
& New Hyde Park)
Automatic Loan Payment
ATM Cards - 24 Hour Banking
VISA® Debit Cards
N.O.W. Checking Accounts
Personal Demand Checking Accounts
Business Checking Accounts
Commercial Line of Credit
Telephone Banking Service

**MEMBER FDIC**





EQUAL HOUSING
**LENDER**

**Payments may also be made in person at any convenient Maspeth Federal Savings Office**

MAIN OFFICE: 56-18 69ᵗʰ St.,  Maspeth, NY 11378 - (718) 335-1300 Ⓟ
64-19 Woodhaven Blvd., Rego Park, NY 11374 - (718) 459-3400 Ⓟ
101-09 Metropolitan Ave., Forest Hills, NY 11375 - (718) 520-1500 Ⓟ

66-60 Fresh Pond Road, Ridgewood, NY 11385 - (718) 497-4800
801 Jericho Turnpike, New Hyde Park, NY 11040 - (516) 437-5000 Ⓟ
185-18 Horace Harding Exwy., Fresh Meadows, NY 11365 - (718) 353-6145

Ⓟ    — Free Parking Available
www.maspethfederal.com

# EXHIBIT C

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

**Customer Copy**
Label 11-B, March 2004

**Post Office To Addressee**

EG 871025563 US

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code: 11218

Day of Delivery: ☐ Next ☐ 2nd ☐ 2nd Del. Day

Postage $ 15.25

Date Accepted: 3 15 11

Scheduled Date of Delivery: Month 16 Day

Return Receipt Fee $

Time Accepted: 1:32 ☐ AM ☑ PM

Scheduled Time of Delivery: ☐ Noon ☐ 3 PM

COD Fee $    Insurance Fee $

Flat Rate ☐ or Weight: lbs. 8 oz.

Military: ☐ 2nd Day ☐ 3rd Day

Total Postage & Fees $ 15.25

Int'l Alpha Country Code

Acceptance Emp. Initials

**DELIVERY (POSTAL USE ONLY)**

| | | | |
|---|---|---|---|
| Delivery Attempt Mo. Day | Time | ☐ AM ☐ PM | Employee Signature |
| Delivery Attempt Mo. Day | Time | ☐ AM ☐ PM | Employee Signature |
| Delivery Date Mo. Day | Time | ☐ AM ☐ PM | Employee Signature |

**CUSTOMER USE ONLY**

PAYMENT BY ACCOUNT
Express Mail Corporate Acct. No.

Federal Agency Acct. No. or
Postal Service Acct. No.

**FROM:** (PLEASE PRINT) PHONE (   )

Samuel Freidman
730 E 3rd St
Brooklyn ny 11218

**TO:** (PLEASE PRINT) PHONE (   )

Maspeth Federal Savings
P O Box 5886
Hicksville NY

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN
FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**FOR PICKUP OR TRACKING**

Visit WWW.USPS.COM

Call 1-800-222-1811

EMS

US Postal Service       3/27/2011 9:07:07 AM   PAGE   1/001   Fax Server



**UNITED STATES POSTAL SERVICE**

Date: 03/27/2011

Fax Transmission To: Postal Customer
Fax Number: 718-851-7893

Dear: Postal Customer:

The following is in response to your 03/27/2011 request for delivery information on your
Express Mail(R) item number EG87 1025 563U S. The delivery record shows that this item
was delivered on 03/16/2011 at 09:25 AM in HICKSVILLE, NY 11802to K DONOVAN. The scanned
image of the recipient information is provided below.

Signature of Recipient:

Address of Recipient:

Thank you for selecting the Postal Service for your mailing needs. If you require
additional assistance, please contact your local Post Office or postal representative.

Sincerely

United States Postal Service

# EXHIBIT D



```
              KENSINGTON STATION
              BROOKLYN, New York
                  112189997
              3568880325-0098
03/15/2012 (800)275-8777 11:08:57 AM
=====================================
          ===  Sales Receipt  ===
Product            Sale Unit      Final
Description         Qty Price      Price

HICKSVILLE NY 11801              $12.95
Zone-1 Express Mail
PO Add
0.80 oz.
Label #:EI518955903US
Fri 03/16/12 12:00 PM - Expected
Delivery. Money Back Guarantee
Signature Requested
                                =======
Issue PVI:                       $12.95

                                =======
Total:                           $12.95

Paid by:
MasterCard                       $12.95
  Account #:    XXXXXXXXXXXX7279
  Approval #:   020811
  Transaction #:   246
  23903500925

Order stamps at usps.com/shop or
call 1-800-Stamp24.  Go to
usps.com/clickNship to print
shipping labels with postage. For
other information call
1-800-ASK-USPS.
**********************************
Get your mail when and where you
want it with a secure Post Office
Box. Sign up for a box online at
usps.com/poboxes.
**********************************
**********************************

Bill#:1000202310099
Clerk:04

All sales final on stamps and postage
Refunds for guaranteed services only
   Thank you for your business
**********************************
**********************************
     HELP US SERVE YOU BETTER

           Go to:
   https://postalexperience.com/Pos

    TELL US ABOUT YOUR RECENT
        POSTAL EXPERIENCE

      YOUR OPINION COUNTS
**********************************
```

Gmail - U.S. Postal Service Track & Confirm email Restoration - EI5...        https://mail.google.com/mail/u/0/?ui=2&ik=7b08d37916&view=pt&...



**SHIMON GREENBERG <dovy734@gmail.com>**

## U.S. Postal Service Track & Confirm email Restoration - EI51 8955 903U S
1 message

**U.S._Postal_Service_** <U.S._Postal_Service@usps.com>                    Mon, Aug 6, 2012 at 11:17 AM
To: DOVY734@gmail.com

This is a post-only message. Please do not respond.

SHIMON GREENBERG has requested that you receive this restoration information for Track & Confirm as
listed below.

Current Track & Confirm e-mail information provided by the U.S. Postal Service.

Label Number: EI51 8955 903U S

Service Type: Express Mail(R)

| Shipment Activity | Location | Date & Time |
|---|---|---|
| Delivered | HICKSVILLE NY 11802 | 03/16/12  8:36am |
| Notice Left (No Authorized Recipient Available) | HICKSVILLE NY 11802 | 03/16/12  6:41am |
| Arrival at Post Office | HICKSVILLE NY 11801 | 03/16/12  6:38am |
| Depart USPS Sort Facility | MELVILLE NY 11747 | 03/16/12 |
| Processed through USPS Sort Facility | MELVILLE NY 11747 | 03/15/12 11:17pm |
| Dispatched to Sort Facility | BROOKLYN NY 11218 | 03/15/12  7:14pm |
| Acceptance | BROOKLYN NY 11218 | 03/15/12 11:07am |

USPS has not verified the validity of any email addresses submitted via its online Track & Confirm tool.

For more information, or if you have additional questions on Track & Confirm services and features, please
visit the Frequently Asked Questions (FAQs) section of our Track & Confirm site at http://www.usps.com
/shipping/trackandconfirmfaqs.htm

# EXHIBIT E

```
=================================
        KENSINGTON STATION
       BROOKLYN, New York
            112189997
         3568880325-0098
05/15/2012 (800)275-8777 12:46:38 PM
=================================
======= Sales Receipt =======
Product        Sale Unit    Final
Description     Qty Price    Price

HICKSVILLE NY 11801                $12.95
Zone-1 Express Mail
PO-Add
0.80 oz.
Label #:EI517767020US
Wed 05/16/12 12:00PM - Expected
Delivery. Money Back Guarantee
Signature Requested
                            ========
Issue PVI:                    $12.95

                            ========
Total:                        $12.95

Paid by:
MasterCard                    $12.95
  Account #:    XXXXXXXXXXXX7279
  Approval #:   014612
  Transaction #:  522
  23903590625
```

```
Order stamps at usps.com/shop or
call 1-800-Stamp24.  Go to
usps.com/clicknship to print
shipping labels with postage.  For
other information call
1-800-ASK-USPS.
*************************************
*************************************
Get your mail when and where you
want it with a secure Post Office
Box. Sign up for a box online at
usps.com/poboxes.
*************************************
*************************************

Bill#:1000202466453
Clerk:10

All sales final on stamps and postage
Refunds for guaranteed services only
      Thank you for your business
*************************************
*************************************
    HELP US SERVE YOU BETTER

          Go to:
    https://postalexperience.com/Pos

    POSTAL EXPERIENCE

    YOUR OPINION COUNTS
*************************************
```

**EXPRESS MAIL**
UNITED STATES POSTAL SERVICE®

Customer Copy
Post Office To Addressee

EI 517767020 US

**ORIGIN (POSTAL SERVICE USE ONLY)**

PO ZIP Code
1128

Day of Delivery

Postage
$ 1295

Date Accepted
5-15-12

Scheduled Date of Delivery

Return Receipt Fee
$

Time Accepted
☐ AM
☐ PM

Scheduled Time of Delivery
☐ Noon   ☐ 3 PM

COD Fee      Insurance Fee
$             $

Flat Rate ☐ or Weight
9 2 oz.

☐ 2nd Day   ☐ 3rd Day

Total Postage & Fees
$

Int'l Alpha Country Code

Acceptance Emp. Initials

**DELIVERY (POSTAL USE ONLY)**

Delivery Attempt   Time   ☐ AM ☐ PM
Mo.      Day

Delivery Attempt   Time   ☐ AM ☐ PM
Mo.      Day

Delivery Date   Time   ☐ AM ☐ PM
Mo.      Day

MAY 15 2012

**CUSTOMER USE ONLY**

PAYMENT BY ACCOUNT
Express Mail Corporate Acct. No.

Federal Agency Acct. No. or
Postal Service Acct. No.

NO DELIVERY

**FROM:** (PLEASE PRINT)   PHONE (   )

Samuel Freidman
730 E 3rd St Brooklyn NY
11218

**TO:** (PLEASE PRINT)   PHONE (   )

Maspeth Federal savings
Po Box 5886
Hicksville NY 11801

ZIP + 4 (U.S. ADDRESSES ONLY. DO NOT USE FOR FOREIGN POSTAL CODES.)

FOR INTERNATIONAL DESTINATIONS, WRITE COUNTRY NAME BELOW.

**FOR PICKUP OR TRACKING**
Visit **www.usps.com**
Call 1-800-222-1811

EMS

**From:**      Tamar Pacht
**To:**          Joseph Cohen
**Subject:**  FW: U.S. Postal Service Track & Confirm email Restoration - ei517767020us
**Date:**       Tuesday, November 05, 2013 5:01:00 PM

---

**From:** US_Postal_Service@usps.com [mailto:US_Postal_Service@usps.com]
**Sent:** Tuesday, November 05, 2013 5:01 PM
**To:** Tamar Pacht
**Subject:** U.S. Postal Service Track & Confirm email Restoration - ei517767020us

This is a post-only message. Please do not respond.

tamar pacht has requested that you receive this restoration information for Track & Confirm as listed below.

Current Track & Confirm e-mail information provided by the U.S. Postal Service.

Label Number: ei517767020us

Service Type: Priority Mail Express®

| Shipment Activity | Location | Date & Time |
|---|---|---|
| Delivered | HICKSVILLE NY 11802 | May 16, 2012 9:11 am |
| Sorting Complete | HICKSVILLE NY 11801 | May 16, 2012 8:48 am |
| Notice Left (No Authorized Recipient Available) | HICKSVILLE NY 11802 | May 16, 2012 6:47 am |
| Arrival at Post Office | HICKSVILLE NY 11801 | May 16, 2012 6:38 am |
| Depart USPS Sort Facility | MELVILLE NY 11747 | May 16, 2012 |
| Processed through USPS Sort Facility | MELVILLE NY 11747 | May 15, 2012 11:14 pm |
| Dispatched to Sort Facility | BROOKLYN NY 11218 | May 15, 2012 6:38 pm |
| Processed through USPS Sort Facility | BROOKLYN NY 11256 | May 15, 2012 3:19 pm |
| Acceptance | BROOKLYN NY 11218 | May 15, 2012 12:44 pm |

USPS has not verified the validity of any email addresses submitted via its online Track & Confirm tool.

For more information, or if you have additional questions on Track & Confirm services and features, please visit the Frequently Asked Questions (FAQs) section of our Track & Confirm tool at http://www.usps.com/shipping/trackandconfirmfaqs.htm.

# EXHIBIT F

```
================================
          KENSINGTON STATION
          419 MCDONALD AVE
          BROOKLYN, NY 11218-9997

07/15/2013                01:50:01 PM
================================

              Sales Receipt
Product       Sale    Unit       Final
Description    Qty    Price      Price

HICKSVILLE, NY  11801          $14.10
**Zone-1 Express Mail® with
$100.00 insurance
  0 lb. 0.70 oz.
  * Expected delivery tomorrow, July
  16, by noon if you mail it here
  before 5:30PM today.
  Money Back Guarantee
%% Label #: See Attached Form
                             ========
Issue Postage:                 $14.10

Total:                       ========
                               $14.10

Paid by:
DebitCard                      $14.10
  Account #:     XXXXXXXXXXXX7279
  Approval #:    045113
  Transaction #: 657
  23-902590284-99
  Receipt #:     019288

APC Transaction #:        21
USPS® #          350801-9550

** Delivery date may be affected by
the time tendered to the Postal
Service™ in addition to weekend and
holiday operational hours and
transportation availability.

%% To check on the delivery status of
this article, visit our Track &
Confirm website at USPS.com. use this
Automated Postal Center™ (or any
Automated Postal Center™ at other
Postal locations) or call
1-800-222-1811.

Please retain all receipts from
affixed forms. For inquiries or
service failure refunds, both the
sales receipt and the customer copy
from the affixed form shall be
required.

              Thanks.
    It's a pleasure to serve you.

ALL SALES FINAL ON STAMPS AND POSTAGE.
REFUNDS FOR GUARANTEED SERVICES ONLY.
```

TO: (PLEASE PRINT)
Maspeth Federal Savings
Po Box 5686
Hicksville NY
11802

FROM: (PLEASE PRINT)
Samuel Friedman
730 E 3rd St. Brooklyn
NY 11218

EI 518 054 663 US

FOR PICKUP OR TRACKING
Visit WWW.USPS.COM
Call 1-800-222-1811

**UNITED STATES**
**POSTAL SERVICE**

Date: August 5, 2013

Shimon Greenberg:

The following is in response to your August 5, 2013 request for delivery information on your Priority Mail Express® item number EI518905663US.  The delivery record shows that this item was delivered on July 16, 2013 at 9:09 am in HICKSVILLE, NY 11802 to K DONOVAN. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.

If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,
United States Postal Service



MASPETH
FEDERAL
SAVINGS
*We Treat You Like Family*

## LOAN PAYMENT PAST DUE NOTICE

| DATE | LOAN NUMBER |
|------|-------------|
| 7/16/13 | 0000115171 |

| DUE DATE | TOTAL LATE CHARGE | TOTAL AMOUNT DUE |
|----------|-------------------|------------------|
| 7/01/13 | 1,176.96 | 4,446.31 |

Your loan payment which was due on the date indicated above has not been received. Unless you have already done so, please forward the total amount due by return mail or call the Collection Department at (718)651-7888.

**We may report information about your account to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report.**

56-05 69th Street  Maspeth, NY. 11378  (718)651-7888